STEVE W. BERMAN (*pro hac vice pending*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

LEE M. GORDON (SBN 174168)
lee@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

*Attorneys for Plaintiff*
*and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Josette Ruhnke, an individual, *et al.*; on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SkinMedica, Inc., a Delaware Corporation, and  Allergan, Inc., a Delaware Corporation; <br><br> Defendants. | No.  SACV14 - 00420 DOC (JPRx) <br><br> **CLASS ACTION (FRCP 23)** <br><br> **CLASS ACTION COMPLAINT** <br><br> **Demand for Jury Trial** |

CLASS ACTION COMPLAINT
010428-11 677653 V1

TABLE OF CONTENTS

I.  OVERVIEW ................................................................................................ 1

II.  PARTIES .................................................................................................. 2

III.  JURISDICTION AND VENUE.................................................................. 3

IV.  FACTUAL ALLEGATIONS ..................................................................... 4

    A.  SkinMedica's Marketing and Sale of TNS Products. ....................... 4

    B.  Federal and California Food, Drug, and Cosmetics Laws. ................. 7

    C.  TNS Products Qualify as Drug Products and Require Approval Before Marketing. .................................................................................... 10

    D.  TNS Products Are Not Approved by either the FDA or California DPH, and the Labeling Does Not Provide Adequate Safety Warnings.............. 11

    E.  Two Growth Factor Products with FDA Approval (Not TNS Products).14

    F.  Defendants Had a Duty to Disclose Safety Concerns about TNS Products and the True Nature of TNS Product Sales............................... 15

    G.  Plaintiff and Members of the Class Suffered Injury as a Result of Defendants' Misconduct. .................................................................. 17

V.  CLASS ACTION ALLEGATIONS.......................................................... 18

VI.  CAUSES OF ACTION ........................................................................... 22

Plaintiff Josette Ruhnke ("Plaintiff") brings this action on behalf of herself and all others similarly situated against SkinMedica, Inc. and Allergan, Inc. (collectively "SkinMedica" or "Defendants").  Plaintiff's allegations against Defendants are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## I.    OVERVIEW

1.    As a matter of law and public interest, a health care company should identify and disclose any safety concerns associated with its products before marketing or selling those products to consumers.  If the company markets or sells drug products that have not been approved by the relevant government agencies when approval was required, particularly drug products that raise safety concerns, the company should disclose the lack of approval and the illegality of product sales.

2.    SkinMedica, Inc. is a pharmaceutical company that markets and sells a line of so-called "cosmeceutical" skin care products under the brand name "TNS®" (hereafter, "TNS Products").  Allergan, Inc. is a health care company focused on commercializing pharmaceuticals, biologics, medical devices and over-the-counter consumer products.  SkinMedica is an Allergan Company.

3.    SkinMedica's TNS Products contain a proprietary mix of "human growth factors" (trademarked as "NouriCel-MD ®").  This SkinMedica growth factor mix was derived from human foreskin tissue.

4.     Human growth factors are proteins intended to mobilize, stimulate, decrease or otherwise alter the production of cells in vivo.  Importantly, they have the ability to initiate mitosis (cell division).

5.    The human growth factors contained in TNS Products pose significant health risks, including but not limited to the risk of cancer.  Indeed, growth factors are believed to contribute to the growth of tumor cells or other abnormalities.

1

6.      TNS Products qualify as drugs (and cosmetics) under both federal laws and parallel state laws governing food, drugs, and cosmetics.  Neither the U.S. Food and Drug Administration ("FDA") nor the California Department of Public Health ("DPH") has determined that TNS Products are safe, and neither has approved TNS Products for sale.  Rather, TNS Products are misbranded under both federal laws and parallel state laws.

7.      In marketing and selling TNS Products, SkinMedica materially omits and does not adequately disclose the safety concerns associated with human growth factors contained in TNS Products.  Moreover, SkinMedica does not disclose to consumers the lack of government approval for TNS Product sales or the fact that TNS Product sales are illegal in California and the United States.

8.      As discussed more fully herein, SkinMedica's conduct violates: (i) California's Business & Professions Code §§ 17200, *et seq.* (the Unfair Competition Laws or "UCL"); (ii) California Civil Code §§ 1750, *et seq.* (the Consumers Legal Remedies Act or "CLRA"); (iii) California's Business & Professions Code §§ 17500, *et seq.* (the False Advertising Laws or "FAL"); and (iv) California Civil Code §§ 1709-1710 (Deceit).

## II.    PARTIES

9.      Plaintiff Josette Ruhnke is and was at all relevant times a citizen of the State of California, residing in the City of Mission Viejo, California.  Plaintiff has purchased and used SkinMedica TNS Products for personal, family, or household purposes, including TNS Essential Serum, which she purchased from the office of Dr. Lorrie Klein at 30201 Golden Lantern, Laguna Niguel, California within the past four years.

10.      Plaintiff looked at the product packaging and labeling.  If Defendants had properly disclosed the true facts about their TNS Products, Plaintiff either would not have purchased those products and/or she would have paid less for them.

CLASS ACTION COMPLAINT
010428-11  677653 V1

11.     Defendant SkinMedica, Inc. is a pharmaceutical company headquartered in Carlsbad, California, and incorporated in Delaware.  SkinMedica, Inc. is a subsidiary of Allergan, Inc.

12.     Defendant Allergan, Inc. is a healthcare company headquartered in Irvine, California, and incorporated in Delaware.  Allergan, Inc. commercializes pharmaceuticals and other healthcare products.  On information and belief, on or about December 19, 2012, Plaintiff alleges that Allergan, Inc. acquired SkinMedica, Inc. along with the assets, liabilities, rights, and responsibilities associated with the SkinMedica TNS Product line.  At present, SkinMedica TNS Products are also promoted as Allergan products.

13.     Plaintiff further alleges upon information and belief that, from and after December 19, 2012, SkinMedica, Inc. was and is an agent of Allergan, Inc.  In acting or omitting to act as alleged in this Complaint, SkinMedica, Inc. was conducting business in the course and scope of this agency, and/or the alleged acts or omissions of SkinMedica, Inc. were subsequently ratified and adopted by Allergan, Inc.  Accordingly, Allergan, Inc. is liable for the acts and omissions of SkinMedica, Inc. as its agent.

### III.     JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for the Class (defined in Part V below) exceeds $5,000,000, and the Class includes members who are citizens of a different state than Defendants.

15.     This Court has personal jurisdiction over Plaintiff Josette Ruhnke because she resides in Mission Viejo, California and she submits to the Court's jurisdiction.

CLASS ACTION COMPLAINT
010428-11  677653 V1

16.     This Court has personal jurisdiction over Defendant Allergan, Inc. because it is headquartered in this Central District of California and it conducts substantial business in this district and throughout the State of California.

17.     This Court has personal jurisdiction over Defendant SkinMedica, Inc. because it is headquartered in Carlsbad, California, it is a subsidiary of Allergan, Inc., and it conducts substantial business in this district and throughout the State of California.

18.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because one or more of the Defendants resides in this district, both Defendants reside in this State, Defendants have marketed and sold TNS Products within this district, and a substantial number of the acts and omissions alleged in this Complaint occurred within this district.

## IV.     FACTUAL ALLEGATIONS

**A.     SkinMedica's Marketing and Sale of TNS Products.**

19.     SkinMedica Inc.'s human growth factor mix was originally developed by a company called Advanced Tissue Sciences ("ATS").  On March 21, 2003, SkinMedica, Inc. acquired the "NouriCel" product line and all of the related assets from ATS.  SkinMedica, Inc. began selling NouriCel in 2003 as its "TNS Recovery Complex" skin care product.  At present, SkinMedica markets several TNS Products, all of which contain substantially the same proprietary mix of human growth factors contained in the TNS Product line.

20.     SkinMedica develops, markets, distributes, and sells TNS Products through doctors' offices and retailers in California and nationwide.

21.     TNS Products include the following: (i) TNS Essential Serum; (ii) TNS Eye Repair; (iii) TNS Ultimate Daily Moisturizer; (iv) TNS Body Lotion; (v) TNS Ceramide Treatment Cream; (vi) TNS Recovery Complex; (vii) TNS Lip Plump System; (viii) TNS Line Refine; (ix) TNS Illuminating Eye Cream; (x) TNS Body

4

Mist; (xi) TNS Hydrating Masque; (xii) TNS Hydrafacial Serum; and (xiii) TNS Recovery Complex Body Lotion.

22. For purposes of the claims asserted in this action, each TNS Product is substantially similar to each of the other TNS Products insofar as: (a) each TNS Product is a topical skin care product that is developed, marketed, and sold by SkinMedica; (b) each TNS Product contains the same proprietary human growth factor mix (NouriCel-MD®); (c) the labeling and packaging of each TNS Product omits the same material facts about human growth factors; and (d) Plaintiff alleges the same misbranding and nondisclosures about human growth factors, under the same federal law and parallel state law requirements, for the same reasons with respect to each TNS Product.

23. SkinMedica promotes TNS Products as "cosmeceuticals" containing a mix of endogenous "growth factors" for skin rejuvenation. The term "cosmeceutical" conveys that a product is both a cosmetic and pharmaceutical. In SkinMedica, Inc.'s 2004 IPO summary listed on NASDAQ, the company publicized:

> We are a specialty pharmaceutical company focused on developing, acquiring and commercializing products that treat dermatologic conditions and diseases and improve the appearance of skin. Through our own sales force, we market and sell primarily to dermatologists both prescription pharmaceutical products and physician-dispensed, non-prescription skin care products, which we refer to as cosmeceuticals for marketing purposes.
>
> * * *
>
> Our cosmeceutical products are physician-dispensed, non-prescription products designed to enhance skin appearance, reduce signs of aging and provide other skin care benefits.

CLASS ACTION COMPLAINT
010428-11  677653 V1

1    Our leading cosmeceutical product line is Tissue Nutrient

2    Solution, or TNS, which contains a biotechnology-derived,

3    naturally occurring mix of growth factors and other key

4    ingredients that, when applied topically, may improve the

5    appearance of skin.

6    24.    Each TNS Product lists "Human Fibroblast Conditioned Media" as an

7    active ingredient, and each TNS Product contains the same human growth factor

8    mix—NouriCel-MD.  The labeling and packaging of each TNS Product, however,

9    omits the same material facts about NouriCel-MD (as discussed more fully below).

10   25.    SkinMedica's Product Guide has described TNS Products as "skin

11   rejuvenation" products vital to the anti-aging process that works with the skin's

12   "natural cellular restructuring process."  SkinMedica describes growth factors in the

13   Product Guide as proteins that "regulate cellular growth and the activity of skin

14   cells."  SkinMedica further describes TNS®, a Tissue Nutrient Solution, as "a

15   combination of growth factors and other naturally occurring elements that are crucial

16   to the regeneration of healthy skin."  A snapshot of a relevant portion of

17   SkinMedica' 2011 Product Guide follows:

18

19

20

21

22

23

24

25

26

27

28

6





**Figure 1**

26.     In the same Product Guide, SkinMedica also describes the flagship TNS Recovery Complex® product as the first and only patented anti-aging treatment using a combination of "growth factors clinically proven to improve the appearance of fine lines and wrinkles, skin tone, texture, and elasticity."

**B.      Federal and California Food, Drug, and Cosmetics Laws.**

27.     The federal Food, Drug, and Cosmetics Act ("FDCA") (21 U.S.C. §§ 301 *et. seq.*) defines drugs to mean, in relevant part [C]: "articles (other than food) intended to affect the structure or any function of the body of man or other animals" [21 § U.S.C. 321(g)(1)].  Likewise, California's Sherman Food, Drug, and Cosmetics Law ("Sherman FD&C") (California's Health & Safety Code §§ 109875 *et. seq.*) provides in pertinent part that "'Drug' means any of the following: . . .(c) Any article

CLASS ACTION COMPLAINT
010428-11  677653 V1

other than food, that is used or intended to affect the structure or any function of the body of human beings or any other animal."  [Cal. Health & Safety Code § 109925]

28.     Notably, there is no separate category for "cosmeceuticals" under the FDCA or Sherman FD&C.  Products that qualify both as drugs and cosmetics must comply with regulations both for drugs and cosmetics.

29.     The regulatory scheme for drugs (including drug products marketed as cosmeceuticals) varies based on whether the product is a prescription only product or an Over-The-Counter ("OTC") product.  Under the federal scheme, drug manufacturers generally must file NDAs (New Drug Applications) with the FDA in order to start the regulatory process.

30.     When a drug product qualifies as a "biologic" under FDA regulations, the manufacturer (or other responsible party) must file a Biologics License Application ("BLA") to start the process of obtaining FDA approval.  Biologics are regulated like prescription drugs.  The BLA is a request for permission to introduce, or deliver for introduction, a biologic product into interstate commerce.  BLA requirements include, among other things, pre-clinical studies, clinical studies, and labeling requirements.[1]

31.     Under the FDCA, non-biologic OTC drug products that conform to "monographs" for particular drug categories could be marketed under federal law without an NDA, but they still would need to conform to the monographs in the Code of Federal Regulations, and the FDA has stringent labeling requirements for such drugs.  In addition to providing specific and mandated information about the contents of OTC drugs, the FDCA requires labeling disclosures about dosages, warnings, and allergic reaction alerts (among other required disclosures).

---

[1] "Biologics" include proteins derived from human sources and isolated through biotechnology methods.

CLASS ACTION COMPLAINT
010428-11  677653 V1

32.     The introduction or delivery of "misbranded" drug products in interstate commerce is prohibited under the FDCA, as is the misbranding of any drug product. [21 U.S.C. § 331]  Under the FDCA, a drug product will be deemed "misbranded" for the following reasons (among others): if its labeling is false or misleading in any particular (such as by failing to disclose material facts about the drug product to consumers); if any required wording is not prominently displayed and clearly stated on the label; if the labeling does not bear adequate warnings against unsafe dosage, or methods, or duration of administration or application; if it is dangerous to health when used in the dosage or manner or with the frequency or duration prescribed, recommended or suggested in the labeling; or if there is a failure or refusal to comply with any requirement prescribed under the FDCA.  [21 U.S.C. § 352]

33.     California's Sherman FD&C Law parallels the FDCA in material part and adopts all nonprescription drug regulations and NDA regulations pursuant to the federal FDCA as state regulations.

34.     Under California's Sherman FD&C Law, no one may sell any new drug unless it has an approved NDA or BLA under federal law or unless the California DPH has approved a new drug application.  In addition, no person shall manufacture any drug in California unless he or she has a valid license from the California DPH.

35.     The Sherman FD&C Law further provides that any drug that, because of the potentiality for harmful effect is not safe for use except under the supervision of a licensed practitioner requires a prescription and a product label warning that sale requires a prescription.

36.     Furthermore, the drug product labeling and packaging must conform to specific state regulations and the labeling must bear adequate warnings against unsafe dosage or methods or duration of administration or application.  All advertising materials must include a summary of side effects and contraindications.

9

CLASS ACTION COMPLAINT
010428-11  677653 V1

37.     Under the Sherman FD&C Law, much like under the federal FDCA, it is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug that is misbranded, or to misbrand any drug.  [Cal. Health & Safety Code §§ 111440, 111445]  A drug is "misbranded" under the Sherman FD&C Law if it fails to comply with any of the above-described regulations or if its labeling is otherwise false or misleading in any particular (such as by failing to disclose material facts about the drug product to consumers).

## C.     TNS Products Qualify as Drug Products and Require Approval Before Marketing.

38.     TNS Products are articles (other than food) intended to affect the structure or any function of the human body, namely the skin.  "Growth factors are proteins that regulate cellular growth, proliferation and differentiation under controlled conditions" and they affect "skin structure and function."[2]  Indeed, TNS Products are designed to affect the skin's structure and function by inducing cell division and replication and stimulating skin cell production.[3]  TNS Products do not strictly mask, cleanse, or moisturize the skin (as do cosmetics)—TNS Products use human growth factors (NouriCel-MD®) to affect cell biology.  Furthermore, the NouriCel-MD in TNS Products is designed to promote the formation of collagen and/or elastic fibres in the skin.  For each of these reasons, TNS Products qualify as drugs both under the FDCA and the Sherman FD&C, and regulations thereunder.  As such, SkinMedica required FDA approval and/or California DPH approval before it could lawfully make, market, and sell TNS Products.

---

[2] *See* Role of Growth Factors in Skin Creams, Facts About the Skin from DermNet New Zealand Trust (available online at: *www.dermnetnz.org/treatments/growth-factor-creams.html*).

[3] Skin care products that are designed to regenerate skin cells have been recognized as drug products by the FDA.  *See, e.g., http://www.fda.gov/Cosmetics/GuidanceComplianceRegulatoryInformation/ucm074201.htm.*

CLASS ACTION COMPLAINT
010428-11  677653 V1

39.    TNS Products are also "biologics" insofar as they contain proteins (human growth factors) derived from human foreskin tissue and isolated through biotechnology methods.

40.    SkinMedica's manufacture, marketing, and sale of TNS Products violate California's Sherman FD&C Law (California's Health & Safety Code §§ 109875 *et. seq.*) and constitutes misbranding thereunder (and corresponding provisions of federal law.  The labeling and packaging fail to disclose important and mandatory information about use of TNS Products (and the human growth factors contained therein).  Without limitation, TNS Products are misbranded as follows: (i) under § 111330, because the product labeling is misleading insofar as it fails to disclose all significant safety concerns; (ii) under § 111335, because the product labeling and packaging do not conform to the requirements of Chapter 4 (commencing with § 110290); (iii) under § 111360, because SkinMedica fails to include in all advertising materials a summary of all side effects and  contraindications; (iv) under § 111375, because the product labeling does not bear adequate warnings as to unsafe dosages or methods or duration of administration or application; and/or (v) under § 111400, because it may be dangerous to health when used in the suggested frequency, duration, or dosage.

41.    Moreover, SkinMedica's manufacture, marketing, and sale of TNS Products are unlawful under the Sherman FD&C Law because the products are sold without an approved new drug application or BLA [California's Health & Safety Code § 111550].

**D.    TNS Products Are Not Approved by either the FDA or California DPH, and the Labeling Does Not Provide Adequate Safety Warnings.**

42.    Although TNS Products qualify as drugs (and biologics) under federal and state laws alike, they are not approved either by the FDA or California DPH.

CLASS ACTION COMPLAINT
010428-11 677653 V1

43.     SkinMedica markets TNS Products as if they did not require government approval, when in fact the products do require government approval.

44.     On its website, SkinMedica maintains that most of its products (including TNS Products) are intended to meet the FDA's definition of cosmetic products but are not intended to be drug products.[4]  Importantly, however, TNS Products are intended to use human growth factors (originally derived from human foreskin tissue) to affect the structure and function of the skin through cell division, multiplication, and regeneration of skin tissue.  Consequently, TNS Products meet the definition of "drugs" (and biologics) under both federal laws and parallel state laws.

45.     SkinMedica wrongly pronounces that TNS Products do not require FDA approval.  Because TNS Products are drug products being sold without FDA approval, and because SkinMedica does not provide mandatory and important product labeling information (as required by the FDA and California DPH for such products), they are misbranded under both the federal FDCA and parallel provisions of California's Sherman FD&C.

46.     In particular, SkinMedica's TNS Products require—but do not provide—disclosures of significant health risks associated with human growth factors.  That is to say, SkinMedica markets and sells TNS Products without warning consumers that the NouriCel-MD in TNS Products poses significant health risks, including but not limited to the risk of cancer from unintended cell growth or other abnormalities.

47.     According to Allergan, all safety concerns associated with SkinMedica TNS Products are described on package inserts that accompany the products.

---

[4] SkinMedica's own website, for example, includes such a representation at the bottom of the home page.  *See http://www.skinmedica.com.*

12

48.     In reality, the labeling and package inserts that accompany SkinMedica TNS Products do not describe the safety concerns at issue.  The available scientific literature regarding human growth factors indicates that growth factors (including those in TNS) raise serious safety concerns, including tumor growth and adverse reactions (such as allergic reactions, eye issues, and rashes).  Growth factors have known carcinogenic potential because they literally cause cells to grow, and every growth factor has certain tumor types that secrete the specific growth factor.  TNS Products, however, do not describe these safety concerns.

49.     For example, TNS Products contain a formula that purportedly blends over 110 growth factors, including KGF-1.  Substantial scientific evidence shows that KGF-1 contributes to the growth of a number of cancers (e.g., breast cancer).[5] The labeling and package inserts that accompany SkinMedica TNS Products do not identify any cancer risks due to the human growth factors contained in the products.

50.     "Most of the research on human growth factors for skin has looked primarily at the issue of wound healing, and at short-term use. Much remains unknown at this time, especially in terms of long-term risk or stability, when growth factors are used in cosmetics and applied to skin. Well-controlled clinical studies are lacking."[6]  Wound healing treatments using human growth factors have a black box warning and are approved by the FDA.  The dearth of well-controlled clinical studies is particularly dangerous in this context, since skin care products get used repeatedly and often over extended periods of time.

51.     Dr. Fitzpatrick is the doctor credited with creating NouriCel-MD®, the key component of TNS Products.  In a 2008 report written by Dr. Fitzpatrick, he acknowledged: "More double-blind and controlled studies are needed to confirm the

---

[5] *See* Journal of the National Cancer Institute, Vol. 98, No. 12, 2006.

[6] *See* Role of Growth Factors in Skin Creams, Facts About the Skin from DermNet New Zealand Trust (available online at: *www.dermnetnz.org/treatments/growth-factor-creams.html*).

13

preliminary clinical effects of growth factor products, and more controls on product quality and stability need to be established."[7]  No such double-blind and controlled studies have been reported and do not appear to be recognized by the FDA or California DPH.

**E.      Two Growth Factor Products with FDA Approval (Not TNS Products).**

52.      Plaintiff knows of only two FDA-approved products available to the public that contain human growth factors.  Both products provide prominent health warnings on their labels addressing significant health risks. Both products are authorized only for the treatment of specific and limited severe medical conditions.

53.      There is one FDA-approved topical formula containing human growth factors: REGRANEX® Gel (Becaplermin).  Regranex was approved by the FDA under a BLA, because Regranex contains a recombinant human platelet-derived growth factor (rhPDGF-BB) for topical administration.  Accordingly, growth factors derived from human cells already have been recognized by the FDA as biologics.

54.      Regranex, which is used for diabetic foot ulcers, includes a black box warning that describes a fivefold increase in deaths from cancer when three or more tubes are used.  The Regranex label warns that the product contains "a recombinant human platelet-derived growth factor, which promotes cellular proliferation and angiogenesis," and further warns that the benefits and risks of the growth factor treatment should be carefully evaluated.  By contrast, the labeling and package inserts that accompany SkinMedica TNS Products do not provide similar safety warnings.

55.      There is one FDA-approved intravenous drug containing growth factors: Kepivance, which was approved for treatment of severe oral mucositis.  According to its label, "Kepivance has been shown to enhance the growth of human epithelial tumor cell lines in vitro" and poses other risks such as "fetal harm."  By contrast, the

[7] *See http://www.ncbi.nlm.nih.gov/pubmed/18045360.*

14

labeling and packaging of SkinMedica TNS Products do not provide similar safety warnings.

**F.     Defendants Had a Duty to Disclose Safety Concerns about TNS Products and the True Nature of TNS Product Sales.**

56.     Defendants had a duty to disclose: (a) safety concerns posed by the human growth factor mix in TNS Products; (b) the lack of government approval of TNS Products as drug products; and (c) the illegality of TNS Product sales.

57.     At all relevant times, Defendants had superior and exclusive knowledge of material facts about the health risks and related safety concerns posed by the human growth factor mix in TNS Products, and about the lack of government approval and illegality of TNS Product sales.  Such facts were not known or reasonably accessible to Plaintiff.  Plaintiff is informed and believes that Defendants had superior and exclusive knowledge of these material facts through its product testing and internal legal reviews (and Allergan's due diligence review in connection with the acquisition of SkinMedica, Inc.) that would have revealed the safety concerns associated with TNS Products and the lack of government approvals and illegality of TNS Product sales.

58.     Plaintiff is further informed and believes that Defendants were aware of consumer complaints and scholarly research about safety concerns and adverse reactions associated with human growth factors (e.g., NouriCel-MD contained in TNS Products), which information was reasonably known to Defendants at all relevant times.

59.     Defendants were familiar with the requisite federal regulatory scheme having sought approval for a variety of drug products other than TNS Products. Plaintiff is informed and believes that, through consumer complaints, competitors, and/or market research, Defendants were aware that they were marketing and selling

CLASS ACTION COMPLAINT
010428-11  677653 V1

TNS Products without proper FDA approval, but Defendants continued to market and sell such products anyway.

60.     Defendants actively concealed material facts from Plaintiff and members of the Class about safety concerns associated with TNS Products, the true regulatory status of TNS Products, and the illegality of TNS Product sales. Defendants also ignored reports of adverse reactions from human growth factors.

61.     At the same time, Defendants were intimately aware of the true nature of NouriCel-MD in TNS Products, including that it affects the structure and/or function of the skin, and thus knew or reasonably should have known that TNS Products were drug products within the governing federal and state law definitions. Nonetheless, Defendants affirmatively represented to consumers that TNS Products were considered cosmetics but not drug products.  Defendants also wrongly informed consumers that TNS Product packaging disclosed all relevant safety information.  In this manner, Defendants actively concealed the safety concerns, approval status, and illegality associated with TNS Product sales.

62.     By marketing and selling TNS Products, Defendants effectively represented that the products were approved by the FDA or California DPH, and that they were legally saleable, when they were not.  Such representations were misleading absent full disclosure of material facts about unevaluated safety concerns, the true regulatory status of TNS Products, and the illegality of such product sales.

63.     Reasonable consumers would consider the omitted facts to be important in determining whether or not to purchase TNS Products, namely the omitted facts regarding: safety concerns, the approval status, and illegality of sales.  To be sure, nondisclosures about such facts are generally recognized to be material omissions.

CLASS ACTION COMPLAINT
010428-11  677653 V1

**G.    Plaintiff and Members of the Class Suffered Injury as a Result of Defendants' Misconduct.**

64.    SkinMedica's conduct violates California's UCL, CLRA, FAL, and civil laws against deceit.  In particular, this class action seeks to remedy SkinMedica's unlawful, unfair, and deceptive marketing and sale of misbranded drug products without full and adequate disclosure of: (a) significant safety concerns, (b) the lack of government approval, and (c) the illegality of product sales. SkinMedica's conduct violates California's consumer protection laws and injures consumers in California and nationwide.

65.    At all relevant times, SkinMedica has been under a duty to Plaintiff and other similarly situated consumers to identify and disclose the true health risks and related safety concerns associated with human growth factors contained in TNS Products.  At the same time, SkinMedica has been under a duty to disclose to consumers the lack of government approval and the illegality of TNS Product sales.

66.    For at least the past four years, SkinMedica has failed to disclose the significant safety concerns associated with TNS Products, the lack of government approval, and the illegality of TNS Product sales.  Plaintiff is informed and believes that Defendants have not conducted adequate safety studies on TNS Products.

67.    Upon information and belief, at least thousands of consumers have been victims of SkinMedica's unlawful, unfair, and deceptive marketing and sale of TNS Products.  SkinMedica knows or reasonably should know that the marketing and sale of TNS Products was and is unlawful, unfair, and deceptive.

68.    The true facts about safety concerns, lack of government approval, and illegality of TNS Product sales would be material to a reasonable consumer. Therefore, consumer reliance upon SkinMedica's material omissions can and should be presumed as a matter of law.

17

69.     Plaintiff purchased TNS Products while unaware of significant safety concerns, the lack of government approval, or the illegality of product sales.

70.     Plaintiff and members of the Class lost money as a result of SkinMedica's material omissions regarding the health risks and legal status of TNS Products.

71.     Based on the material omissions described herein, Plaintiff and members of the Class were induced to and did purchase SkinMedica TNS Products instead of saving their money or purchasing competing skin care products.

72.     Plaintiff and members of the Class altered their position to their detriment and suffered injuries that include payment of the purchase price for TNS Products and/or payment of price premiums for such products.

73.     At the time Plaintiff purchased TNS Products, Plaintiff relied upon SkinMedica's material omissions of fact regarding significant safety concerns, the lack of government approval, and the illegality of product sales.  Plaintiff and other similarly situated consumers were likely to be misled, and they reasonably and justifiably relied to their detriment on SkinMedica's omissions of material facts.

74.     If SkinMedica had disclosed the truth about significant safety concerns, the lack of government approval, and the illegality of product sales, Plaintiff would not have purchased TNS Products or paid as much for them.

75.     As a result of the alleged misconduct, SkinMedica has generated substantial revenues from the sale of TNS Products.

76.     Plaintiff, individually and on behalf of all others similarly situated, seeks damages, restitution and injunctive relief to put an end to SkinMedica's unfair business practices.

## V.     CLASS ACTION ALLEGATIONS

77.     Plaintiff seeks certification of a Class defined as follows:

> All consumers nationwide who: (i) purchased any TNS
> Product (ii) for personal, family, or household purposes

18

(iii) at any time during the four year period preceding the filing of the original complaint ("The Class"). Excluded from the Class are Defendants; the officers, directors or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir or assign of Defendants. Also, excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

78.     Plaintiff does not assert any personal injury claim in this action as a result of using Defendants' TNS Products.

79.     Plaintiff does not know the exact number of Class members at the present time.  However, due to the nature of the trade and commerce involved, there appear to be thousands of Class members such that joinder of all Class members is impracticable.

80.     The Class is ascertainable and notice can be provided through techniques similar to those customarily used in other consumer fraud cases and complex class actions, and through SkinMedica's business records.

81.     There are questions of law and fact common to the Class.  Defendants' unlawful omissions similarly impact Class members, all of who purchased one or more of SkinMedica's TNS Products.

82.     Plaintiff asserts claims that are typical of the Class.  Plaintiff and all Class members have been subjected to the same wrongful conduct because they all have purchased SkinMedica's misbranded TNS Products that contained human growth factors (NouriCel-MD), that lacked regulatory approval from the FDA and California DHS, and that failed to provide adequate warnings of health risks.  As a result, and like other members of the Class, Plaintiff purchased and paid an amount for TNS Products which she otherwise would not have paid.

CLASS ACTION COMPLAINT
010428-11  677653 V1

83. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

84. Class certification is appropriate because Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

85. Class certification is also appropriate because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class, including, *inter alia*, the following:

a. Whether TNS Products qualify as drug products under federal and parallel state laws governing food, drugs, and cosmetics;

b. Whether TNS Products are misbranded under federal and parallel state laws governing food, drugs, and cosmetics;

c. Whether the manufacture, marketing, or sale of TNS Products are unlawful under federal and parallel state laws governing food, drugs, and cosmetics;

d. Whether Defendants had a duty to disclose material facts regarding safety concerns associated with TNS Products, or the lack of government approvals, or the illegality of TNS Product sales;

e. Whether Defendants failed to disclose material facts regarding safety concerns associated with TNS Products, such as the potential for uncontrolled cell growth and the absence of well-controlled safety studies;

f. Whether Defendants failed to disclose material facts regarding the lack of government approval of TNS Products;

g. Whether Defendants failed to disclose material facts regarding the illegality of TNS Product sales;

h. Whether Defendants' nondisclosures would be material to a reasonable consumer;

i. Whether Defendants' nondisclosures constitute an unlawful business practice in violation of the UCL;

20

j.    Whether Defendants' nondisclosures constitute an unfair business practice in violation of the UCL;

k.    Whether Defendants' nondisclosures were likely to deceive a reasonable consumer in violation of the UCL, CLRA, or FAL;

l.    Whether Defendants knowingly or willfully failed to disclose significant safety concerns associated with TNS Products;

m.    Whether Defendants knowingly or willfully failed to disclose material facts regarding the lack of government approval of TNS Products;

n.    Whether Defendants knowingly or willfully failed to disclose material facts regarding the illegality of TNS Product sales;

o.    Whether the challenged practices harmed Plaintiff and members of the Class; and

p.    Whether Plaintiff and members of the Class are entitled to damages, restitution, equitable relief, and/or injunctive relief.

86.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable.  Furthermore, because the restitution and/or damages suffered, and continue to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

87.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

21

CLASS ACTION COMPLAINT
010428-11  677653 V1

# VI.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, *et seq.*)

88.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

89.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practice."  Defendants have engaged in unlawful, and unfair, and fraudulent business acts and practices in violation of the UCL.

90.    Defendants have violated the unlawful prong by virtue of their violations of the Sherman Food Drug & Cosmetics Laws, California's Health & Safety Code §§ 111330 *et seq.*, and selling misbranded drug products thereunder.

91.    In addition, Defendants have violated the unlawful prong by virtue of their violations of the CLRA, the FAL, and Cal. Civil Code §§ 1709-1710.

92.    Defendants have violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint—including the omission of product safety concerns—offend established public policy.  The challenged conduct is substantially injurious to consumers.  The harm that these acts and practices cause to consumers greatly outweighs any benefits associated with them.  Reasonable consumers are not in a position to know and understand the safety concerns posed by the TNS Products being made, marketed, and/or sold by Defendants.

93.    Defendants' conduct also impairs competition within the market for skin care products, and stops Plaintiff and Class members from making fully informed decisions about the kind of skin care products to purchase or the price to pay for such products.

94.    Defendants have violated the fraudulent prong of section 17200 because their material omissions about safety concerns associated with TNS Products were

CLASS ACTION COMPLAINT
010428-11 677653 V1

likely to deceive a reasonable consumer and the true facts would be material to a reasonable consumer.  Moreover, Defendants material omissions about the lack of government approval of TNS Products, and/or the illegality of TNS product sales, were likely to deceive a reasonable consumer, and the true facts would be material to a reasonable consumer.

95.    Plaintiff has suffered injury in fact, including the loss of money, as a result of Defendants' unlawful, unfair, and/or deceptive practices.  As set forth more fully above, in purchasing TNS Products, Plaintiff relied on Defendants to make complete disclosures of all material information about her purchase.  Had she known about the safety concerns associated with TNS Products (including but not limited to an increased risk of cancer), or that the products were misbranded, lacked required government approvals, and were legally unsaleable, she would not have purchased those TNS Products or she would have paid less for them.

96.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of SkinMedica's business.  Defendants' wrongful conduct is part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

97.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing its unlawful, unfair, and deceptive business practices, to restore to Plaintiff and members of the Class any money that Defendants acquired by unfair competition (as provided in Cal. Bus. & Prof. Code § 17203), and to provide such other relief as set forth below.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT
(CAL. CIV. CODE § 1750, *et seq.*)

98.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

CLASS ACTION COMPLAINT
010428-11  677653 V1

1    99.   Defendants are "persons" under Cal. Civ. Code § 1761(c).

2    100.   Plaintiff is a "consumer," as defined by Cal. Civ. Code § 1761(d), who

3 purchased TNS Products, which are goods that were made, marketed, and/or sold by

4 Defendants.

5    101.   Cal. Civ. Code § 1770(a)(2) prohibits "[m]isrepresenting the source,

6 sponsorship, approval, or certification of goods or services."  Defendants violated

7 this provision by marketing and selling misbranded drug products, which required

8 government approval for sale, but which did not have it.  The sale of each TNS

9 Product was a misrepresentation that the product was approved by the FDA and/or

10 California DPH.

11    102.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or

12 services have sponsorship, approval, characteristics, ingredients, uses, benefits, or

13 quantities which they do not have…."  Defendants violated this provision by

14 marketing and selling misbranded drug products that posed safety concerns.  The

15 sale of each TNS Product misrepresented that the product was free of undisclosed

16 safety concerns.  In addition, the sale of each TNS Product misrepresented that the

17 product had all necessary government approvals and was otherwise legally offered

18 for sale.

19    103.   Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or

20 services are of a particular standard, quality, or grade, or that goods are of a

21 particular style or model, if they are of another."  Defendants violated this provision

22 by marketing and selling misbranded drug products that posed safety concerns.  The

23 sale of each TNS Product misrepresented that the product was free of undisclosed

24 safety concerns.  In addition, the sale of each TNS Product misrepresented that the

25 product had all necessary government approvals and was otherwise legally offered

26 for sale.

27

28

24

104.    The CLRA (including §§ 1770(a) (2), (5), (7)) supports claims for omissions of material fact that Defendants were obligated to disclose.  In this case, Defendants were obligated to disclose—but failed to disclose—the known safety concerns associated with human growth factors contained in TNS Products, the lack of government approvals of TNS Products, and the illegality of TNS Product sales.

105.    Plaintiff and the Class lost money and were damaged as a result of SkinMedica's violations of the CLRA because:  (a) they purchased TNS Products due to the material omissions about the products' safety concerns, approval status, and saleability; and (b) they would not have purchased TNS Products on the same terms if the true facts had been known.  Absent these material omissions, Plaintiff and the Class would not have purchased TNS Products at all or they would have paid less for them.

106.    As a result of these violations, Defendants have caused and continue to cause damage to Plaintiff and members of the Class and, if not stopped, will continue to harm them.

107.    In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and members of the Class seek injunctive and equitable relief for SkinMedica's violations of the CLRA.

108.    Although Plaintiff does not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

109.    Plaintiffs include an affidavit with this Complaint reflecting that venue in this District is proper, to the extent such an affidavit is required by Cal. Civ. Code § 1780(d) in federal court.

CLASS ACTION COMPLAINT
010428-11  677653 V1

### THIRD CAUSE OF ACTION

### VIOLATIONS OF THE FALSE ADVERTSING LAW
#### (CAL. BUS. & PROF CODE §§ 17500, *et seq.*)

110.   Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

111.   California Business & Professions Code §§ 17500, *et seq.* (the "FAL") broadly proscribes deceptive advertising in this State.  Section 17500 makes it unlawful for any corporation intending to sell products or perform services to make any statement in advertising those products or services concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or not to sell those products or services as advertised at the price stated therein, or as so advertised.

112.   When the seller has a duty to disclose material facts about a product, the sale of the product to consumers without disclosure of such material facts runs afoul of the FAL.

113.   SkinMedica markets and sells the TNS Product line as if the products are free of significant safety concerns, when in fact, they are not.  SkinMedica effectively misrepresents the health risks posed by human growth factors and the failure to conduct adequate safety evaluations thereof.

114.   SkinMedica also markets and sells the TNS Product line as if the products have all necessary government approvals and are legally offered for sale, when in fact, they do not have such approvals and are misbranded and sold illegally.

115.   Section 17535 effectively provides that the Court may enjoin any corporation or other person who violates the FAL, and may make such orders or judgments as may be necessary to prevent the use of such practices, or which may be necessary to restore to any person in interest any money or property which may have

26

1    been acquired by means of such practices.  An FAL claim may be prosecuted by any

2    person who has suffered injury in fact and has lost money or property as a result of a

3    violation of the FAL. The action may be prosecuted on a representative basis when it

4    meets the traditional class action requirements.

5          116.   Plaintiff and the Class have suffered injury in fact and lost money or

6    property as a result of SkinMedica's violations of the FAL because:  (a) they

7    purchased TNS Products due to the material omissions about safety concerns, the

8    lack of government approvals, and the illegality of product sales; and (b) they would

9    not have purchased TNS Products on the same terms if the true facts had been

10    known.  Absent the material omissions, Plaintiff and the Class would not have

11    purchased TNS Products at all or they would have paid less for them.

12          117.   As a result of these violations, Defendants have caused and continue to

13    cause damage to Plaintiff and members of the Class and, if not stopped, will continue

14    to harm them.

15          118.   Plaintiff and members of the Class request that this Court enjoin

16    Defendants from continuing to market and sell TNS Products without required

17    government approvals and disclosure of known safety concerns.

18          119.   In addition, Plaintiff and members of the Class request that this Court

19    enter such orders or judgments as may be necessary to restore to any person in

20    interest any money which may have been acquired by means of such material

21    omissions and deceptive marketing and selling of TNS Products to consumers.

22                  **FOURTH CAUSE OF ACTION**

23              **DECEIT (CAL CIV. CODE §§ 1709-1710)**

24          120.   Plaintiffs reallege and incorporate by reference all paragraphs alleged

25    herein.

26

27

28

27

121.   Under California Civil Code § 1709: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

122.   Under California Civil Code § 1710, Deceit includes (among other things): "[i] The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; or [ii] the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."

123.   By marketing and selling TNS Products, Defendants willfully suggest that TNS Products do not pose significant safety concerns, comply with all required government approvals, and are lawfully offered for sale.  The suggested facts are not true, and Plaintiff is informed and believes that Defendants do not believe them to be true.

124.   Plaintiff is informed and believes that Defendants willfully suppressed and omitted the material facts concerning the safety concerns, approval status, and illegality of TNS Product sales.

125.   Defendants had a duty to disclose these material facts.  The duty to disclose arises from: (a) their superior and exclusive knowledge of these material facts, which were not known or reasonably accessible to Plaintiff; (b) their active concealment of these material facts, and/or (c) their marketing and sale of TNS Products as skin rejuvenating cosmetics, which is likely to mislead consumers absent full disclosure of the material facts at issue.  In any event, product sellers must also disclose safety concerns associated with the sale of consumer goods (particularly drug products).

126.   Defendants suppressed and omitted these material facts concerning the safety concerns, approval status, and illegality of TNS Product sales with the intent to induce Plaintiff and members of the Class to purchase TNS Products.

1    127.   Plaintiff and the Class were unaware of these suppressed and omitted

2    material facts at the time of their purchases of TNS Products.  If they had known of

3    such material facts at the time of their purchases, Plaintiff and the Class would not

4    have purchased the TNS Products, and/or they would have paid less for them.

5    128.   As a result of Defendants' suppression and omission of material facts,

6    Plaintiff and the Class sustained economic damages in an amount to be determined at

7    trial.

8    **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiff, individually and on behalf of all others similarly

10   situated, respectfully requests that this Court enter a judgment against Defendant and

11   in favor of Plaintiff, and grant the following relief:

12   A.     Determine that this action may be maintained as a Class action with

13   respect to the Class identified herein and certify it as such under Rules 23(b)(2)

14   and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately

15   certified, and designate and appoint Plaintiff as a Class Representative and her

16   counsel as Class Counsel;

17   B.     Declare, adjudge and decree the conduct of the Defendants as alleged

18   herein to be unlawful, unfair and/or deceptive;

19   C.     Enjoin Defendants from continuing the unlawful, unfair and/or

20   deceptive marketing and sale of TNS Products without full disclosure of safety

21   concerns and without required government approvals;

22   D.     Award Plaintiff and the Class restitution of all monies paid to Defendant

23   as a result of the unlawful, unfair, and/or deceptive business practices;

24   E.     Award Plaintiff and the Class actual, compensatory damages, as proven

25   at trial, except that CLRA damages will be requested after CLRA notice;

26

27

28

29

1        F.      Award Plaintiff and the Class exemplary damages in such amount as

2  proven at trial, except that CLRA punitive damages will be requested after CLRA

3  notice;

4        G.      Award Plaintiff and the Class reasonable attorneys' fees, costs, and pre-

5  and post-judgment interest; and

6        H.      Award Plaintiff and the Class such other further and different relief as

7  the nature of the case may require or as may be determined to be just, equitable, and

8  proper by this Court.

## JURY TRIAL DEMAND

10       Plaintiff, by counsel, requests a trial by jury on their legal claims, as set forth

11  herein.

13  DATED: March 19, 2014

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By _____

Lee M. Gordon (174168)

lee@hbsslaw.com
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150

Steve W. Berman (*Pro Hac Vice pending*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT
010428-11 677653 V1

STEVE W. BERMAN (*pro hac vice pending*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

LEE M. GORDON (SBN 174168)
lee@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Josette Ruhnke, an individual, *et al.*; on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>  v.<br><br>SkinMedica, Inc., a Delaware Corporation, and Allergan, Inc., a Delaware Corporation,<br><br>         Defendants. | No.<br><br>**DECLARATION OF JOSETTE RUHNKE RE CLRA VENUE** |

### DECLARATION OF JOSETTE RUHNKE

I, Josette Ruhnke, do hereby declare and state as follows:

1.      I am a party plaintiff in *Josette Ruhnke, an individual, et al.; on behalf of herself and all others similarly situated, v. SkinMedica, Inc., a Delaware Corporation, and Allergan, Inc., a Delaware Corporation.* Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code § 1780(a). I have personal knowledge of the facts stated herein and, if necessary, could competently testify thereto.

2.      This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a district that is a proper place for trial of this action because: (i) Defendant Allergan, Inc. has its principal place of business in Orange County, California (within the Central District of California) and it does a substantial amount of business in this district; (ii) Defendant SkinMedica, Inc., an Allergan company, also conducts substantial business in this district; and (iii) I purchased one or more of the TNS Products at issue in Orange County, California (within this district).

This declaration is signed under penalty of perjury under the laws of the state of California and the United States this 18th day of March, 2014.

By:   _Josette Ruhnke_____
          Josette Ruhnke

- 1 -

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| | |
|---|---|
| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
| JOSETTE RUHNKE, an individual, et al.; on behalf of herself and all others similarly situated, | SKINMEDICA, INC., a Delaware Corporation, and ALLERGAN, INC., a Delaware Corporation; |

| | |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff    ORANGE COUNTY<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant<br>*(IN U.S. PLAINTIFF CASES ONLY)* |

| | |
|---|---|
| **(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.<br>Lee M. Gordon (SBN 174168)<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>301 N. Lake Ave., Suite 203<br>Pasadena, CA 91101 (213) 330-7150 | **Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 5,000,000 +

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Cal. Bus. & Prof. Code §17200, et seq., Cal. Bus. & Prof. Code §1750, et seq.; Cal. Bus. & Prof. Code §17500, et seq.; Cal. Civ. Code §§1709-1710

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☒ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | **SACV14 – 00420 DOC (JPRx)** |
|---|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court?  ☐ Yes  ☒ No  If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action?  ☐ Yes  ☒ No  If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?  Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?  Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims?  (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

| C.1.  Is either of the following true?  If so, check the one that applies: | C.2.  Is either of the following true?  If so, check the one that applies: |
|---|---|
| ☒ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below.  If none applies, answer question C2 to the right. ➡ | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below.  If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | SOUTHERN |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____   DATE: _3/19/2014_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ David O. Carter _____ and the assigned Magistrate Judge is _____ Jean P. Rosenbluth _____ .

The case number on all documents filed with the Court should read as follows:

### SACV14-00420 DOC (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ March 19, 2014 _____
Date

By _D. Lagman_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)        NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES